# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| CHAD POORE, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:18CV00022 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| MAIN STREET AMERICA | ) | By: James P. Jones |
| ASSURANCE COMPANY, ET AL., | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

*David L. Scyphers, Scyphers & Austin, P.C., Abingdon, Virginia, for Plaintiffs; Thomas S. Garrett and Robert F. Friedman, Harman, Claytor, Corrigan & Wellman, Richmond, Virginia, for Defendants.*

[In this action under Virginia law, the plaintiffs seek recovery under a homeowners insurance policy due to mold that occurred because of water infiltration into their house over time from a leaky gutter. The insurance company denies coverage on the ground, among others, that the policy does not insure for loss caused by mold. The parties have filed cross motions for summary judgment, which have been fully briefed and orally argued and are ripe for decision. For the reasons stated, I find that there is no coverage under the policy.

I.

The following facts from the summary judgment record are uncontested, at least for the purposes of the present motions.

Defendant NGM Insurance Company (the Insurance Company) issued a homeowners insurance policy (the Policy) to plaintiff Chad Poore for residential property located in Washington County, Virginia, owned by Poore and his wife Becky (the Poores), for a policy period from October 1, 2015, through October 1, 2016.[1]  On December 30, 2016, the Poores notified the Insurance Company of a mold claim at their home.  Their claim was not approved by the Insurance Company.  The mold produced health problems for the family who, on the advice of a physician, abandoned the residence as uninhabitable and its contents as unsalvageable.  The property was ultimately foreclosed upon by a lender.

On January 26, 2018, the Poores filed suit in state court against the Insurance Company, in which it was asserted that in December of 2016 they had discovered "that there had been a leak in the house which had caused black mold, which was causing them health problems."  Compl. ¶ 6, ECF No. 1-2.  They sought damages under the Policy for the value of the home, the personal property in the home, and the loss of use of the property.  The suit was timely removed by the defendants to this court pursuant to 28 U.S.C. § 1441(b), based upon subject-matter jurisdiction by virtue of diversity of citizenship and amount in controversy.

---

[1] In addition to NGM Insurance Company, the plaintiffs also sued Main Street America Assurance Group and Main Street America Protection Insurance Company, but it is clear that those companies, while they may be affiliated with NGM Insurance Company, did not issue the Policy and are entitled to summary judgment for that reason.

28 U.S.C. § 1332(a)(1). The Insurance Company filed a Counterclaim seeking a declaratory judgment that there is no coverage under the terms of the Policy.

Each side has retained an expert. The Poores' expert opines that there was a failure of the sealant of the end cap on a rain gutter that abutted a fireplace chimney chase at the rear of the home. This failure caused water to leak from the gutter and infiltrate the sheathing of the chimney chase, making its way down to the home's crawl space and producing the mold. Defs.' Mem. Supp. Mot. Summ. J. Ex. 6, Mitchell Dep. 25, 28, 32, 35, 36, ECF No. 16-6. The Insurance Company's expert agrees. *Id.* Ex.7, Report of Findings 7, ECF No. 16-7.

Following discovery, the parties have filed cross motions for summary judgment. The Poores explain that while there may have been minor repairable damage from the water infiltration, that damage is not the basis for their claim. Rather, "[t]he damages which led to this claim were the black mold caused by the leak." Pls.' Mot. Summ. J. ¶ 12, ECF No. 14. The Poores contend that because the Policy provides coverage for water damage they are entitled to payment. The Insurance Company argues that there is no coverage for the loss under the plain terms of the Policy and based upon the undisputed facts.[2]

---

[2] The Insurance Company also asserts that the Poores' Motion for Summary Judgment is procedurally deficient because it fails to comply with Federal Rule of Civil Procedure 56 and Local Civil Rule 56, in that it does not set forth separately the undisputed material facts or specific record citations. The Insurance Company is correct, but under the circumstances I will not reply on these failures in determining the case.

II.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not a "disfavored procedural shortcut," but an important mechanism for disposing of "claims and defenses [that] have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). It is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks and citations omitted).

The parties agree that Virginia law governs the substantive issues in this case. The Supreme Court of Virginia has established the following relevant legal principles:

> In general, courts interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the document. Each component of an insurance contract should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein. When a policy does not define a given term, we give the word its ordinary and accepted meaning.
>
> With regard to the exclusions in the . . . coverage, our consideration is governed by well-settled principles. Exclusionary language in an insurance policy will be construed most strongly against the insurer and the burden is upon the insurer to prove that an exclusion applies. Reasonable exclusions not in conflict with statute

will be enforced, but it is incumbent upon the insurer to employ exclusionary language that is clear and unambiguous.

*Transcon. Ins. Co. v. RBMW, Inc.*, 551 S.E.2d 313, 318 (Va. 2001) (internal quotation marks, citations and alteration omitted). Generally, "[t]he interpretation of a contract presents a question of law." *City of Chesapeake v. States Self-Insurers Risk Retention Grp., Inc.*, 628 S.E.2d 539, 541 (Va. 2006). Where a contract "is complete on its face, [and] is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." *Monticello Ins. Co. v. Baecher,* 477 S.E.2d 490, 491 (Va. 1996) (internal quotation marks and citation omitted).

The Policy provided in pertinent part as follows:

**SECTION I – PROPERTY COVERAGES**

\* \* \*

**COVERAGE D – Loss of Use**

The limit of liability for Coverage D is the total limit for all the coverages that follow:

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover, at your choice, either of the following. However, if the "residence premises" is not your principal place of residence, we will not provide the option under paragraph **b.** below.

    **a.** **Additional Living Expense**, meaning any necessary increase in living expense incurred by you so that your household can maintain its normal standard of living; or

    **b.**    **Fair Rental Value**, meaning the fair rental value of that part of the "residence premises" where you reside less any expenses that do not continue while the premises is not fit to live in.

Payment under **a.** of **b.** will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

*  *  *

### SECTION I – PERILS INSURED AGAINST

**COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES**

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss;

**1.** Involving collapse, other than as provided in Additional Coverage B.;

**2.** Caused by:

*  *  *

    **e.**    Any of the following:

        **(1)**    Wear and tear, marring, deterioration;

        **(2)**    Inherent vice, latent defect, mechanical breakdown;

        **(3)**    Smog, rust or other corrosion, mold, wet or dry rot;

*  *  *

    If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household

appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

3. Excluded under Section 1– Exclusions.

Under items **1.** and **2.**, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

**COVERAGE C – PERSONAL PROPERTY**

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I – EXCLUSIONS

1. **Fire or lightning.**

2. **Windstorm or hail.**

    This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

    This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

3. **Explosion**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles.**

7. **Smoke,** meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8.  **Vandalism or malicious mischief.**

9.  **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

    This peril does not include loss caused by theft:

    a.  Committed by an "insured";

    b.  In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or

    c.  From that part of a "residence premises" rented by an "insurer" to other than an "insured."

    This peril does not include loss caused by theft that occurs off the "residence premises" of:

    a.  Property while at any other residence owned by, rented to, or occupied by an "insured," except while an "insured" is temporarily living there. Property of a student who is an "insured" is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;

    b.  Watercraft, and their furnishings, equipment and outboard engines or motors; or

    c.  Trailers and campers.

10. **Falling objects.**

    This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is

first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

    This peril does not include loss:

    a. To the system or appliance from which the water or steam escaped;

    b. Caused by or resulting from freezing except as provided in the peril of freezing below; or

    c. On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

    In this peril, a plumbing system does not include a sump, sump pump or related equipment.

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

    We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

    This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

**15. Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to a tube, transistor or similar electronic component.

**16. Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

## SECTION I – EXCLUSIONS

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

   \* \* \*

   c. **Water Damage,** meaning:

   **(1)** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

   **(2)** Water which backs up through sewers or drains or which overflows from a sump; or

   **(3)** Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

   Direct loss by fire, explosion or theft resulting from water damage is covered.

* * *

  **e.**   **Neglect,** meaning neglect of the "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

* * *

**2.**   We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

  **a.**   **Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph **1**. above to produce the loss.

* * *

  **c.**   **Faulty, inadequate or defective:**

    **(1)**  Planning, zoning, development, surveying, siting;

    **(2)**  Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    **(3)**  Materials used in repair, construction, renovation or remodeling; or

    **(4)**  Maintenance;

of part or all of any property whether on or off the "residence premises."

Defs.' Mem. Supp. Mot. Summ. J. Ex. 2, Policy 2, 3, 6-9, ECF No. 16-2.

While the Poores concede that under Coverage A, relating to their dwelling, the Policy expressly excludes coverage for loss from mold, they argue that the *cause* of the mold was water infiltration into the home and thus the mold is simply the damage from a covered loss.

The coverage of mold loss is a much-litigated insurance question. *See* George L. Blum, *Construction and Application of Insurance Exclusion for Bacteria, Mold, or Other Fungi*, 7 A.L.R.7th art. 5 ¶ 2 (2016). Some of these cases involve first-party claims for loss, such as here, while others involve suits by insureds seeking coverage for claims made against them by third parties.

While the Supreme Court of Virginia has not spoken on the exclusion of mold loss in insurance policies, relying upon that court's settled principles of contract construction, and on cases from other jurisdictions, I find that the mold exclusion here is enforceable to bar coverage.[3]

Arguments similar to that made by the plaintiffs here have been advanced in other cases. I agree with the response of one federal district court, involving an insurer's duty to defend a mold claim made against an insured:

> [The insured] argues that the mold exclusion language in the policy does not exclude "water damage" or "water intrusion" and

---

[3] Where there is no binding state law precedent squarely on point, the court must predict how the highest court of the state would rule if presented with the issue. *Brendle v. Gen. Tire & Rubber Co.*, 505 F.2d 243, 245 (4th Cir. 1974). To do so, the holdings in other states are relevant considerations. *St. Paul Fire & Marine Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 365 F.3d 263, 272 (4th Cir. 2004).

> therefore any water damage or intrusion that ultimately results in mold growth is covered under the policy. This argument confuses cause with effect. The insurance policy has an exclusion for mold. There is no provision that limits the instances in which the exclusion applies. Thus, if there is a claim against the insured regarding mold, it is excluded. It is irrelevant whether the mold was caused by [the insured's] negligence, [the insured's] intentional acts, acts of unaffiliated third parties, or acts of god. In other words, damage caused by mold is excluded regardless of the underlying circumstances that led to the mold growth. Furthermore, if [the insured's] argument were accepted, then no damages arising out of or resulting from mold would ever be excluded under the terms of the present policies as mold will always be an ensuing loss resulting from a covered loss, namely, water damage.

*Schmitt v. NIC Ins. Co.*, No. C 06-5837 MHP, 2007 WL 3232445, at *8 (N.D. Cal. Nov. 1, 2007); *see also* M&H Enters., Inc. v. Westchester Surplus Lines Ins. Co., No. 2:09-cv-1147-LDG(LRL), 2010 WL 5387626, at *3 (D. Nev. Dec. 20, 2010) (denying coverage under contractor's liability policy containing mold exclusion where water from a leak in a higher condominium unit migrated down to claimant's condominium, causing mold contamination).

The same result has been followed in suits to recover for losses under homeowners policies. As stated by one court in denying coverage in a homeowner's suit,

> We do not think that a single phenomenon that is clearly an excluded risk under the policy was meant to become compensable because in a philosophical sense it can also be classified as water damage; it would not be easy to find a case of rot or dampness of atmosphere not equally subject to that label and the exclusions would become practically meaningless.

*Aetna Cas. & Sur. Co. v. Yates*, 344 F.2d 939, 941 (5th Cir. 1965); *see also Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 750 (Tex. 2006) (citing *Yates* and observing in homeowner's suit that "[m]old does not grow without water; if every leak and drip is 'water damage,' then it is hard to imagine any mold, rust, or rot excluded by this policy, and the mold exclusion would be practically meaningless.").

There are cases to the contrary. For example, in *Liristis v. American Family Mutual Insurance Co.*, 61 P.3d 22 (Ariz. Ct. App. 2002), the insured's home had a fire, which was extinguished by water, causing mold. The court held that the mold exclusion in the homeowner's policy did not apply, noting that it would have been applicable had the policy exclusion been worded to exclude not only loss caused by mold but loss consisting of the mold itself. *Id.* at 26. However, I find that the exclusionary language here is sufficiently plain to bar the present claim. In this case, the loss for which the Poores seek recovery was caused by the mold. The Policy excludes such a loss. *See DeVore v. Am. Family Mut. Ins. Co.*, 891 N.E.2d 505, 509 (Ill. App. Ct. 2008) (rejecting *Liristis* and stating that "[t]he losses in this case were twofold: (1) water damage; and (2) mold damage. Under the plain terms of the policy, the former was covered and the latter expressly was not.").

The Policy does include an "ensuing loss" clause in Coverage A relating to the dwelling, which provides that "any ensuing loss to property described in Coverage[] A . . . not excluded or excepted in this policy is covered." Policy 7,

ECF No. 16-2. But that provision does not assist the Poores. An ensuing loss clause is understood to provide coverage for a loss that results or follows from excluded risks, so long as the ensuing loss is not excluded. *Fiess,* 202 S.W.3d at 748 (stating that the "only reasonable construction of [an ensuing loss] clause was that it applied when an excluded risk was followed by an intervening occurrence that in turn caused the ensuing loss") (citing *Lambros v. Standard Fire Ins. Co.*, 530 S.W.2d 138 (Tex. Civ. App. 1975)). *see also Cooper v. Am. Family Mut. Ins. Co.*, 184 F. Supp. 2d 960, 964 (D. Ariz. 2002) (noting that "[o]ther courts which have interpreted this clause similarly hold that the resulting loss provision does not reinsert coverage for excluded losses, but reaffirms coverage for secondary losses ultimately caused by excluded perils.") In other words, the ensuing loss clause would apply here only if the mold had caused a covered loss, and not the other way around.[4]

As to Coverage C, relating to personal property, the Policy only provides coverage caused by certain enumerated losses. It is the insured's burden under Virginia law to show that his claim is within the policy, *TRAVCO Ins. Co. v. Ward*,

---

[4] The Insurance Company also relies on other exclusions, namely, wear and tear, deterioration, latent defect, neglect and inadequate maintenance. In light of my holding, I find it unnecessary to decide those grounds for summary judgment.

The Poores also claim that the Insurance Company did not act in good faith, but because I find no coverage, that claim is inapplicable. In any event, at oral argument, counsel for the Poores stated that the bad faith claim would be withdrawn.

715 F. Supp. 2d 699, 706 (E.D. Va. 2010), and the Poores have failed to show that the loss here is so covered. The only coverage loss relied upon is the "[a]ccidental discharge or overflow of water . . . from within a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or from within a household appliance." Policy 8, ECF No. 16-2. The facts of this case, however, do not include water from any of those sources.

Finally, the claim under Coverage D for loss of use is barred because it requires a loss covered under the property coverage provisions of the Policy. Because I find that that no property loss is covered by the Policy, the loss of use claim is inapplicable.

\* \* \*

From the evidence presented, the Poores undoubtedly suffered significant damage to their property. It is understandable that they would believe that the insurance policy that they purchased would cover their financial loss. Nevertheless, and unfortunately for the Poores, the language of the Policy is plain and must be enforced.

III.

For the foregoing reasons, it is **ORDERED** that the plaintiff's Motion for Summary Judgment, ECF No. 14, is DENIED, and Defendants' Motion for

Summary Judgment, ECF No. 15, is GRANTED.  Judgment will be entered forthwith in favor of the defendants.

                                        ENTER:   November 28, 2018

                                        /s/  *James P. Jones*
                                        United States District Judge